UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ISAAC COX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10 C 2535 |
| ) | |
| GRAND TRUNK WESTERN RAILROAD CO., ) | Judge Joan H. Lefkow |
| and BROTHERHOOOD OF LOCOMOTIVE ) | |
| ENGINEERS AND TRAINMEN (BLET) and ) | |
| DIVISION 33 of the BLET, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This case presents a claim of race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*., and 42 U.S.C. § 1981, against an employer and a union which are parties to a collective bargaining agreement covering the plaintiff's employment. Plaintiff, Isaac Cox, has sued his former employer, Grand Trunk Western Railroad Company ("GTW"), the Brotherhood of Locomotive Engineers and Trainmen ("BLET"), and its Local Division 33. All defendants have moved for summary judgment. For the reasons stated

below, the motions for summary judgment of defendant GTW [#68],[1] of defendant BLET [#63], and of defendant Division 33 [#65] are all granted.[2]

## BACKGROUND[3]

Isaac Cox, who identifies himself as African-American, was hired by the GTW on January 21, 2008 as a locomotive engineer and he worked in that position until his termination in April 2009.[4] Throughout his employment, his work was satisfactory to GTW. Under a collective bargaining agreement between GTW and the BLET ("the CBA"), GTW was a "union shop," meaning it was obliged to dismiss an employee who failed to join a railway union and pay dues once the employee's probationary period ended.

---

[1] Cox filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Canadian National Railway on January 6, 2010, challenging his termination from employment during April, 2009. He filed a charge against BLET on January 22, 2010. The EEOC dismissed the charges and issued notices of right to sue on January 21, 2010, which Cox did not receive until on or after January 23, 2010. This case was timely filed on April 23, 2010. *See* 42 U.S.C. § 2000e-5(f)(1); *Houston* v. *Sidley & Austin*, 185 F.3d 837, 839 (7th Cir. 1999) (ninety-day filing requirement of § 2000e-5(f)(1) begins to run upon plaintiff's "actual receipt" of notice of right to sue).

[2] It is undisputed that GTW is an employer and BLET and Division 33 are labor organizations as defined by Title VII. 42 U.S.C. § 2000e(b), (d) and (e). This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a) and 42 U.S.C. §2000e(5)(f)(3). The appropriateness of venue in this district is undisputed. *See* 42 U.S.C. § 2000e-5(f)(3).

[3] The facts set out in this section are stated in the light most favorable to Cox. They are derived from the statements of fact and supporting documents submitted by the parties to the extent they are relevant, supported by admissible evidence, and consistent with Local Rule 56.1. Where Cox has denied a statement of fact but failed to cite any portion of the record in support, the court has deemed the statement of fact admitted. *See* L.R. 56.1(b)(3)(B) (opposing party's response to moving party's statements of fact must include, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon"). References to the employer-defendant's statement of facts are designated as "EDSOF" and to the union defendants as "UDSOF".

[4] The principal events took place between December 2008 and April 2009. References in text to the year will be noted only where clarity is needed.

The bylaws of BLET generally allocate authority among three divisions: the National Division, the General Committee of Adjustment (the "GCA"), and local divisions such as Division 33. The GCA is responsible for the six local divisions operating under the CBA and has the authority to make and interpret the CBA, rules, rates of pay, and working conditions for the crafts it represents. UDSOF, App. A, Ex. 1; UDSOF 7. John Karakian was chairman of the GCA. He was responsible for enforcing the union shop provision of the CBA on behalf of BLET.

Division 33 is a local union. At all relevant times, its chairman was Terry Tindol, whose principal responsibility was to adjust claims and grievances within Division 33. Division 33's secretary-treasurer was James Bess. Bess was responsible for timely completion and filing of membership reports and for remitting dues to BLET on behalf of members whose dues were not paid through payroll deduction. Tindol, Bess, and Karakian received pay for performing their union duties, presumably from their respective divisions.

Cox had previously worked for Union Pacific Railroad, where he was a member of BLET and current in his dues. He resigned to accept employment with GTW. Since he was changing employers but not unions, Cox believed he was still a member of BLET at GTW. Pl. Ex. 4, Cox Dep. at 65. Before January 2009, he was never contacted by a union representative about joining a union and was not told by any union or GTW representative that he had the responsibility to initiate having union dues taken out of his check. Cox Dep. at 54–55, 66.[5] Although dues should have been deducted after Cox's 60-day probationary period (his seniority date, April 7,

---

[5] By contrast, two of the coworkers stated in declarations that they received a union membership application approximately one month after beginning employment. *See* PX 38, Damsch Decl. ¶ 4; PX 39, Maldonado Decl. ¶¶ 4–5. Because neither states to the contrary, the court infers that Damsch and Maldonado had not been members of a railway union at the time they started work for GTW.

3

2008),[6] they were not. Cox knew that dues were not being deducted from his paycheck, but he assumed it was due to delay in processing. This belief was based on conversations he had with several co-workers sometime before August 2008[7] in which they expressed frustration that union dues were not being deducted from their paychecks after months of employment at GTW. One coworker, Terry Damsch, asked Cox if his dues were being deducted and he responded "No." From these conversations, Cox "assumed that was the norm," implying that he assumed that eventually his dues would be deducted. Cox Dep. at 78.[8] Unlike his coworkers, Cox took no action to inform GTW or the union that his dues were not being taken out of his paycheck. Neither did Cox go to Bess to pay his dues outside payroll deduction.

During November or December, Karakian asked Tindol for an updated seniority list. Tindol Dep. at 12. Karakian explained that there was a discrepancy between his list of engineers, the National Division's list, and GTW's list. Tindol obtained a list from Bess and passed it along to Karakian. Tindol Dep. at 13. Bess brought to Tindol's attention that Cox was on the list of engineers but not on file as paying dues. Tindol Dep. at 15.

Bess talked to Cox by telephone about the situation on January 24, 2009.[9] Cox told Bess he thought that he was already a member (by virtue of his previous employment). Bess sent Cox

---

[6] An employee was to have arranged to join the union by his seniority date.

[7] Cox's testimony that these conversations occurred towards the end of 2008 must be mistaken because the record reflects that the error regarding the coworkers' dues was corrected by August 2008. PX 1, Bess Dep. at 74–76.

[8] BLET and Division 33 object to this statement as hearsay. Damsch's statements are not offered to prove that their dues were not being deducted, or that "it would take a while" for the dues to be deducted, but to show the basis of Cox's belief. As such, the evidence is admissible.

[9] Cox said he spoke with Bess on January 24, 2009. Bess testified that he called on that date but spoke to Cox two weeks later.

a membership application and told him to return it. After a series of follow-up conversations, Bess encountered Cox on a train and gave him another application. He waited until Cox filled it out. By this time ten months had passed since Cox's seniority date.

Bess asked Tindol whether Cox could catch up on dues by authorizing double payments from his paycheck. Tindol said he would have to check with Karakian. Karakian expressed reservations, authorizing Tindol to proceed (with the paperwork, Tindol assumed) but that he would get back to Tindol. Tindol conveyed the message to Bess. Tindol Dep. at 18–20. Ultimately, Karakian rejected the catch up arrangement as well as Cox's offer (through Bess or Tindol) to pay the full amount by check. Tindol Dep. at 21–23. Although Karakian professed that it was against the union's bylaws, no specific provision of the bylaws prohibited BLET or Division 33 from accepting either method. Nonetheless, GCA (meaning Karakian) has nearly complete autonomy over its own collective bargaining affairs, provided that its actions are consistent with BLET bylaws and policy. UDSOF 7.

There have been occasions, however, when arrangements were made for extra dues to be deducted from an employee's paycheck to bring the member current. Tindol Dep. at 30; Pl. Ex. 1, Bess Dep. at 36. For example, three white employees, Terry Damsch (seniority date September 14, 2007), Gabriel Maldonado (seniority date September 14, 2007), and Frank Ripoli (seniority date November 10, 2007) Pl. Exs. 39, 44, submitted applications to Division 33 for membership to begin when their probationary periods ended, and Bess notified GTW to start making dues reductions from their pay. GTW failed to initiate the deductions until months later (in August 2008) after efforts by these individuals to contact the union and Bess's assistance in contacting the employer to get it done. These employees, although delinquent, were allowed to

5

catch up through payroll deduction. For Damsch and Maldonado, ten months had passed before their dues payments began.

On March 6, Karakian notified GTW that Cox was to be fired due to his "brazen non-compliance" since April 4, 2008 with the union shop requirement. UDSOF 31. Once notified that he was to be fired, Cox requested a hearing, to which he was entitled under the CBA. At the hearing, held March 27, Karakian and GTW's Labor Relations Director Timothy Rice were present with Cox and Tindol. This was the first time Karakian had met Cox and the first time Karakian learned Cox's race.[10] The issue at the hearing was whether Cox could demonstrate that he had in fact complied with the union shop agreement. Although this issue was not subject to dispute, Cox hoped to persuade Karakian and Rice that, having joined the union, he could pay his dues in full and be excused from past non-compliance. This effort was unavailing, as Rice notified Cox by letter dated April 6 that he had failed to demonstrate compliance and his employment was therefore terminated. UDSOF 36.

Harold D. Mayer, who is white, was also a locomotive engineer for GTW. At the same time that Cox was terminated, Karakian ordered Mayer's termination for his "brazen non-compliance" with the requirement that he be a union member. UDSOF 29, App. B, Cox Dep. Ex. 4, (CN0006). In terminating Mayer, Karakian explained that Mayer "drop[ped] out of BLET" and quit paying dues in June, 2008. Because he did not join a different union, he was in violation of the CBA. Mayer did not request a hearing. He wrote to Rice requesting that he "take care of this matter and get me reinstated." Rice denied his request on the basis that he had

---

[10] Although Cox does not admit this statement, he offers no evidence to the contrary such as that he had met Karakian on a previous occasion.

6

not made a timely request for a hearing. UDSOF 29, Cox Dep. Ex. 4 (CN0001). Mayer had failed to pay dues for approximately eight months.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the nonmoving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact is one that might affect the outcome of the suit. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

**I . GTW's Motion for Summary Judgment**

GTW contends that Cox's claim against it is barred by the judgment in *Barnes* v. *Canadian National Railway Co.*, Case No. 04 CV 1249 (N.D. Ill). Cox is a member of a class conditionally certified as part of the settlement entered in *Barnes* by this court. *See Barnes*, Dkt. # 91. GTW, one of Canadian National's subsidiaries, was a defendant in that case. The *Barnes* plaintiffs alleged that the defendant railroad companies engaged in systemic race discrimination, including a pattern and practice of intentional discrimination in decisions regarding terms and conditions of employment, including discipline and discharge decisions. The class consisted of "all current, former, and future African American employees of the Railroad who were employed any time from February 18, 2000 until the date of the Preliminary Approval of this Consent Decree [October 21, 2009]." *Id.*, Dkt. # 91 ¶ II.C. Notice was mailed to the class, including Cox,[11] on October 28, 2009. *Id.*, Dkt. # 86-2, ¶ 3. Notice informed class members of the opportunity to file a claim for monetary compensation under the settlement, object to the settlement, or opt out of the class. *Id.,* Dkt. # 81-7 at 7–8 of 9. Cox took no action in response to the notice. After a fairness hearing, the court approved the settlement and entered the consent decree on January 7, 2010. *Id*., Dkt. # 91–93. The consent decree certified the class and entered the terms of the settlement agreement into the judgment. One of the provisions of the decree was a release, *inter alia*, of all race discrimination claims by members the class against the defendants that had accrued through December 15, 2009.[12]

---

[11] Cox admitted that he received the notice.

[12] Paragraph VII, A of the consent decree provided as follows:

Class Release

Railroad, including its officers, directors, parents, subsidiaries, affiliates, predecessors,

(continued...)

Where a class is certified under Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class member who has received proper notice and does not request exclusion from a class is bound by the judgment "whether favorable or adverse." *Am. Pipe & Const. Co.* v. *Utah*, 414 U.S. 538, 549, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974); *see Tropp* v. *W. S. Life Ins. Co.*, 381 F.3d 591, 596 (7th Cir. 2004) ("[A] release incorporated into an order approving a class action settlement bars subsequent litigation based on the released claims."). The judgment in *Barnes* bars class members' race discrimination claims during a period applicable to Cox.

Cox argues that his claim is outside the scope of the *Barnes* judgment. He first implies that the *Barnes* plaintiffs did not obtain certification. He makes no argument in support of this statement and it is therefore disregarded as well as refuted by the terms of the consent decree. Cox next argues that because he is seeking back pay, lost benefits, reinstatement, as well as compensatory and punitive damages, his claim is "necessarily" outside those of the *Barnes* class. He cites no law supporting this assertion. Moreover, the assertion does not acknowledge that the plaintiffs in *Barnes* also sought back pay, compensatory, punitive, liquidated, and/or nominal

---

(...continued)
        and successors, shall be, and shall be deemed to be, fully, finally, and irrevocably released and discharged by the Named Plaintiffs on behalf of all Class Members who do not opt out of the Litigation in the manner specified by the Court in the Order Granting Preliminary Approval from any and all allegations and causes of action of employment discrimination based on race that were made in the Third Amended Complaint. This release includes all claims of racial discrimination, retaliation, and hostile environment, including those alleged in the Third Amended Complaint, and including but not limited to discrimination and retaliation in appointments, selection decisions, job assignments, promotions, training, discipline, testing, compensation, benefits, evaluations, service ratings, other terms and conditions of employment, and termination, racial harassment, and intimidation. The Class Release shall release claims which accrued up to and including the date the class members submitted a claim form, or, if no claim form was submitted, up to and including December 15, 2009.

        *Barnes* Dkt. # 91 at 7.

damages and injunctive relief regarding placing them in the positions they would have been in absent discrimination. *See Barnes*, Third Am. Compl. at 26–27, ¶¶ 7–10, Dkt. # 49. Finally, he argues without authority that his claim is unique and therefore should be excepted from the *Barnes* class. Cox could have opted out of the class on this basis, but he did not. In short, Cox is a member of the class; he did not opt out; he is bound by the judgment. GTW is entitled to judgment as a matter of law.

## II.  Division 33's Motion for Summary Judgment - Failure to Establish a *Prima Facie* Case of Discrimination

Cox may establish race discrimination using either the direct or the indirect method of proof. *See Scaife* v. *Cook Cnty.*, 446 F.3d 735, 739 (7th Cir. 2006) (citing *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817, 36 L. Ed. 2d 688 (1973)).[13] The union defendants argue that they are entitled to summary judgment because Cox has not presented direct or circumstantial evidence of discrimination under the direct method of proof and cannot establish a *prima facie* case of discrimination under the indirect method of proof. Cox relies on the indirect method and argues that genuine issues of material fact exist such that summary judgment in favor of either BLET or Division 33 is inappropriate.

Under the indirect method of proof, Cox must prove at the threshold that a union defendant demanded his termination under circumstances where a comparable white union member was not terminated. *See generally id.* Once he has established a *prima facie* case, there is a presumption of discrimination. "The burden must then shift to [the defendant] to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802.

---

[13] The court analyzes Cox's section 1981 claims in the same manner as his claim brought under Title VII. *See, e.g.*, *Bratton* v. *Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir. 1996).

Cox must then rebut the union's rationale "by presenting evidence sufficient to enable a trier of fact to find that the . . . proffered explanation is pretextual," *Peele* v. *Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002), or, ultimately, that some evidence indicates animus against a protected class motivated the union. *See Greenslad*e v. *Chicago Sun-Times, Inc.*, 112 F.3d 853, 866–867 (7th Cir. 1997).[14]

GTW terminated Cox's employment not because of poor performance but because the union demanded it. He has also shown that white union members (Maldonado, Damsch and Ripoli) who failed to pay union dues for a comparable period of time were not terminated. To be similarly situated, these individuals must be "directly comparable" to Cox "in all material respects, but they need not be identical in every conceivable way." *Coleman* v. *Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quotations and citation omitted). In cases involving differential discipline, a plaintiff must show that comparators (1) "were treated more favorably by the same decisionmaker," *id.* at 848 (quotation, emphasis and citation omitted), (2) "were subject to the same standards of conduct," *id.*, and (3) "engaged in similar misconduct," which means that they "engaged in conduct of comparable seriousness." *Id.* at 851 (quotation and

---

[14] Where a union is the defendant, the typical articulation of a *prima facie* case is that the plaintiff must show that (1) the employer violated the collective bargaining agreement between the union and the employer; (2) the union breached its own duty of fair representation by letting the breach go unrepaired; and (3) that some evidence indicates animus against a protected class motivated the union." *Greenslad*e, 112 F.3d at 866–867 (citing, *inter alia*, *Johnson* v. *Artim Transp. Sys., Inc.* 826 F.2d 538, 542 (7th Cir. 1987)). Cox, however, relies on the *McDonnell Douglas* format: (1) he is a member of a protected class, (2) he met the employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees who were not in the protected class were treated more favorably. *See Scaife*, 446 F.3d at 739. Defendant likewise relies on this formula but substitutes the union for the employer in element three. As a practical matter, Cox is claiming that the union failed to meet its obligation to him, and his proof depends on whether the union's proffered non-discriminatory reason is pretextual. *See Weber* v. *Univs. Research Ass'n, Inc.*, 621 F.3d 589, 594 (7th Cir. 2010) (Where a plaintiff alleges that similarly situated employees were disciplined less harshly, usually the "legitimate expectations" prong and the "similarly situated" prong merge, (citing *Pantoja* v. *Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 846 (7th Cir. 2007); *Peele*, 288 F.3d at 329)).

citation omitted). A plaintiff must also show that a comparator does not have "such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Weber* v. *Univs. Research Ass'n, Inc.*, 621 F.3d 589, 594 (7th Cir. 2010) (quoting *Peele*, 288 F.3d at 330). It does appear here that a material difference between the comparator employees and Cox is that they (a) had promptly filed an application for membership and (b) followed up about making sure their dues were being paid. Cox, as a pre-existing member of BLET, did not know he had to apply for membership until he was contacted in January, whereas the other three had apparently not been BLET members and knew they had to apply. Even if it is assumed that the three white members are comparable for this purpose, where Division 33 is concerned, all four engineers were treated the same. Both Tindol and Bess exercised considerable effort on behalf of Cox and the three white engineers to correct the membership and dues problems. There is no basis in the evidence for an inference of race discrimination. This is sufficient to entitle Division 33 to summary judgment.

III.     **BLET's Moton for Summary Judgment**

    A.     **Failure to Exhaust Administrative Remedies**

BLET argues first that Cox's claim must fail because he did not exhaust his administrative remedies as required by Title VII. Cox filed a charge of discrimination against BLET Division 33 on January 6, 2010. The charge stated that "the union failed to properly represent me." Apparently the address Cox's lawyer gave the EEOC for Division 33 was

incorrect, so an EEOC representative contacted Karakian, who gave a correct address for Division 33. The notice of the charge was then served on Division 33 at a correct address. UDSOF, Cox Dep. Ex. 4, Doc. # IC001 & IC002. Plaintiff has cited no evidence that Karakian as General Chairman (or counsel for any division of BLET) had notice of the charge before this lawsuit was filed. The EEOC did not investigate or conciliate the charge, so there was no apparent occasion for GCA, or the National Division or their counsel, to be aware of the facts underlying the charge. Neither would it be an obvious inference from the face of the charge that a failure to represent was directed at GCA.

Nonetheless, the amended complaint explicitly alleges that the lawsuit is brought pursuant to both the Civil Rights Act of 1964 and "Title VII of the Civil Rights Act of 1991 [*sic*]," Dkt. # 6, at ¶ 1. Jurisdiction and venue are invoked under the jurisdictional provisions of Title VII and § 1981. *Id.* # 2–3. Significantly, each count of the complaint alleges violation of the Civil Rights Act of 1991. As pleaded, the amended complaint permits an inference of discrimination against BLET's GCA as well as its Division 33 based on § 1981. Because, unlike Title VII, § 1981 has no exhaustion requirement, BLET is not entitled to summary judgment on this basis.[15]

B.   **Whether BLET is entitled to Judgment as a Matter of Law**

If given the benefit of the doubt on Cox's argument that he has made a *prima facie* showing, Cox must still demonstrate a genuine issue of material fact regarding the essential

---

[15] To the extent BLET is arguing that the National Division and GCA are different organizations, the court rejects this view. Both divisions are part of BLET and each uses the name BLET in holding itself out to the public. *See*, *e.g.*, UDSOF, Cox Dep. Ex. 4, Doc # IC0041 & CN0006. The amended complaint makes no distinction between the National Division and the GCA when making allegations about Karakian. Obviously, Karakian, and thus GCA, was the target of the allegations rather than the National Division.

question whether BLET's evidence that it fired Cox because of his failure to join a union and pay dues as of January 2009 was not the true reason for its decision. *See Coleman,* 667 F.3d at 852 (To establish pretext, the plaintiff must present evidence "suggesting that [the defendant] is dissembling." (quoting *O'Leary* v. *Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011)). "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered" as to why the plaintiff was terminated. *Id.* (quoting *O'Leary*, 657 F.3d at 635.)

There is no evidence that Karakian knew Cox's race at the time Tindol requested that Cox be allowed to join the union and catch up on his back dues or at the time he issued the letter of termination. Karakian wrote essentially identical directions to GTW to terminate Mayer and Cox, one day apart. Moreover, as indicated above, Cox's comparators, Damsch, Maldonado, and Ripoli, had timely applied for membership. By the time Karakian demanded the lists to make sure all engineers were union members, these three were paying dues, which suggests that these engineers simply missed being caught in the inquiry Karakian made at the end of the year.

Cox argues that because Mayer did not request a hearing and Cox did, Mayer is not comparable to Cox. This is insufficient to create a genuine issue of material fact that the reason defendants have given for the termination was not true. Where the notice of intended termination advised Mayer and Cox that they could have a hearing to demonstrate compliance with the agreement, Mayer's decision not to request a hearing was reasonable. To infer discrimination, a jury would have to speculate that, had Mayer appealed, Karakian would have changed his decision. This record does not permit that inference. Because Cox cannot prove pretext, BLET is entitled to summary judgment.

**ORDER**

The motion of Grand Trunk Railway for summary judgment [#68] is granted. The motion of Brotherhood of Locomotive Engineers Division 33 for summary judgment [#65] is granted, and the motion of Brotherhood of Locomotive Engineers for summary judgment [#63] is granted. This case is terminated.

DATED: September 7, 2012                    ENTER:

                                                                       JOAN HUMPHREY LEFKOW
                                                                        United States District Judge